FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
Apr 01, 2020
SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSEPH H.,

Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1]

Defendant.

No. 1:19-CV-00137-JTR

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney Chad Hatfield represents Joseph H. (Plaintiff); Special Assistant United States Attorney Sarah Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

---

[1]Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income on March 31, 2015, alleging disability since June 17, 1990, due to learning disability, fetal alcohol syndrome, back pain, wrist injury, cognitive disorder, depression, and ADHD. Tr. 87. He later also alleged gastrointestinal problems contributed to his disability. Tr. 100. The application was denied initially and upon reconsideration. Tr. 110-17, 125-31. Administrative Law Judge (ALJ) Jesse Shumway held a hearing on February 8, 2018, Tr. 32-86, and issued an unfavorable decision on March 28, 2018, Tr. 15-26. Plaintiff requested review of the ALJ's decision from the Appeals Council. Tr. 185-86. The Appeals Council denied the request for review on February 28, 2019. Tr. 1-6. The ALJ's March 2018 decision is the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on April 30, 2019. ECF No. 1.

## STATEMENT OF FACTS

Plaintiff was born in 1990 and was 24 years old as of the filing of his application. Tr. 25. He was born premature and was initially raised in foster care due to his mother's substance abuse while pregnant. Tr. 347, 364. He was adopted by his aunt when he was three years old and began abusing substances at age 10. *Id.* At age 13 he was convicted of a sexual crime and spent time in juvenile detention. Tr. 364. He completed a high school diploma with special education and finished his schooling at a youth center. Tr. 365. He has a minimal work history, primarily consisting of dishwashing, construction labor, and cleaning. Tr. 39, 44, 213.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with

deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national

economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On March 28, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 15-26.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity for the second half of 2017, but that there was a continuous 12-month period during which he did not engage in substantial gainful activity. Tr. 17.

At step two, the ALJ determined Plaintiff had the following severe impairments: irritable bowel syndrome; borderline intellectual functioning; learning disabilities with impairment in reading, writing, and mathematics; and depressive disorder. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found he could perform work at all exertional levels, with the following non-exertional limitations:

> he needs instruction, redirection, and refocusing from a supervisor up to 1/3 of the workday; he needs ready access to a restroom throughout the workday; he is limited to simple, routine, repetitive tasks with a reasoning level of 2 or less; he requires a routine, predictable work environment with no more than occasional, simple changes; he can have no more than occasional, superficial contact with the public; and he cannot work at an assembly-line pace or do other fast-paced work.

Tr. 20.

///

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a kitchen helper. Tr. 24-25.

Despite making dispositive findings at step four, the ALJ alternatively found at step five that, considering Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, specifically identifying the representative occupations of industrial cleaner, laundry worker, and cook helper. Tr. 25-26.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. Tr. 26.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the Commissioner erred by (1) improperly rejecting medical opinion evidence; (2) failing to find Plaintiff's impairments met or equaled a listing at step three; (3) improperly rejecting Plaintiff's subjective complaints; and (4) conducting an inadequate analysis at steps four and five.

## DISCUSSION

### 1. Medical opinion evidence

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, including treating doctor Ello, examining doctors Marks and Genthe, and testifying medical expert Veraldi.

When a treating or examining physician's opinion is contradicted by another physician, the ALJ must offer "specific and legitimate" reasons to reject the opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be

met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

***a. Dr. Marks***

On January 22, 2015, Plaintiff attended a consultative psychological exam with Dr. N.K. Marks. Tr. 364-72. Dr. Marks conducted a clinical interview, a mental status exam, and multiple cognitive assessments. *Id.* She diagnosed Plaintiff with learning disorders, substance dependence in remission, depressive disorder, cognitive disorder, and borderline intellectual functioning. Tr. 366. She concluded Plaintiff had marked limitations in a wide range of work-related abilities and was severely limited in his ability to set realistic goals and plan independently. Tr. 367. She commented that his cognitive testing indicated he "will likely struggle in most work settings without close supervision and an understanding supervisor who is willing to modify his work environment and/or spend extra time supervising him." Tr. 365. She further noted his depression resulted in him being "self-critical, feels guilty, is indecisive, and has difficulty with focus and concentration. His depression would likely interfere with his ability to be a productive staff member." Tr. 366.

While the ALJ acknowledged this report, Tr. 21, he gave it no weight because it predated the filing date of the application and thus was "outside the relevant period," Tr. 24.

Plaintiff argues the opinion is highly relevant to the claim as it was provided less than two months prior to the application date and the ALJ adopted the diagnoses contained within the report as severe impairments. ECF No. 15 at 10-

///

11. Defendant argues that it was rational for the ALJ to give more weight to the evidence from the relevant period over the outdated opinions. ECF No. 16 at 6.

Defendant is correct in noting that "medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, here, Plaintiff alleged disability beginning in 1990. Tr. 87. Dr. Marks' exam occurred in January 2015, less than two months prior to Plaintiff's filing date of his application. The ALJ's conclusion that the opinion should be given less weight because it predates the application for benefits is unsupported in the law. Just because SSI benefits are not payable for any period prior to application, 20 C.F.R. § 416.501, does not mean that the evidence prior to the application should be disregarded, especially when such evidence is dated after the alleged onset date and so close in proximity to the filing of the application. Indeed, the regulations indicate that the agency will develop a complete medical history of a claimant "for at least the 12 months preceding the month in which you file an application" unless the claimant asserts their disability began less than 12 months prior to filing. 20 C.F.R. § 416.912(b). Therefore, the ALJ erred in giving no weight to Dr. Marks' opinion for the sole reason that the opinion predated the application date.

Defendant asserts that even if the ALJ did err, it was harmless. The Commissioner argues that the ALJ's path may be "reasonably discerned," based on the ALJ's discussion of his reasons for giving great weight to Dr. Veraldi. ECF No. 16 at 6-7. The Court finds the ALJ's error is not harmless. An error is only harmless if "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Despite Defendant's invitation for this Court to infer the ALJ's rationale regarding Dr. Veraldi also explains his rejection of Dr. Marks, the Court cannot make such an inference. The ALJ indicated he gave Dr. Veraldi's opinion great weight "because she is the only medical professional to review the

entire longitudinal medical record, she gave a thorough explanation of her opinion and demonstrated its consistency with the record, she was subject to cross-examination, and she has program knowledge." Tr. 23. This reasoning does not clearly translate into a rejection of Dr. Marks. The Court cannot say that the ALJ's weighing of the evidence would not have been different had he not improperly rejected Dr. Marks' opinion for being outside the relevant period.

On remand the ALJ will reconsider the medical evidence as a whole, including Dr. Marks' opinion, and explain the weight assigned.

***b. Dr. Genthe***

Plaintiff underwent a consultative psychological exam with Dr. Thomas Genthe on January 3, 2017. Tr. 394-402. Dr. Genthe diagnosed Plaintiff with mild intellectual disability and substance use disorder in sustained remission. Tr. 396. He found Plaintiff to have numerous moderate limitations and to be markedly limited in handing detailed instructions, adapting to changes, and communicating and performing effectively in the work setting. *Id.* He also opined Plaintiff's cognitive limitations would "likely hinder his acquisition of many important skills in a reasonable amount of time" and that he "may find it difficult to work independently without a fair amount of supervision." Tr. 397.

The ALJ gave this opinion little weight, relying on reviewing doctor Phyllis Sanchez, Ph.D., who found Dr. Genthe's cognitive testing to be suspect in light of earlier testing with Dr. Marks showing higher scores, with no explanation for the precipitous drop in scores. Tr. 23-24.

Plaintiff argues the ALJ improperly substituted his own opinion for that of the examining doctor, and was inconsistent within the decision as to whether the 2015 testing from Dr. Marks was relevant to the proceedings or not. ECF No. 15 at 11-13. Defendant argues the ALJ's decision is supported by substantial evidence, as he relied on Dr. Sanchez's interpretation of the record in concluding that Dr. Genthe's opinion and testing were suspect. ECF No. 16 at 7-8. Defendant

also argues that the limitations set forth by Dr. Genthe are all accounted for in the RFC, and therefore any error on the part of the ALJ in explaining the rejection is harmless. ECF No. 16 at 8-9.

The Court finds the ALJ's decision is supported by substantial evidence. The ALJ reasonably relied on the analysis from Dr. Sanchez in finding Dr. Genthe's testing results to be suspect. However, as this claim is being remanded for further consideration of Dr. Marks' opinion, the ALJ will reconsider all of the opinion evidence in making a new decision.

***c. Dr. Ello***

Plaintiff's treating doctor, Maria Ello, completed a medical source statement on January 25, 2018. Tr. 583-85. She opined Plaintiff was capable of performing medium level work but would be likely to miss two days of work per month due to recurrent abdominal pains. Tr. 584.

The ALJ gave this opinion little weight, finding it appeared to be "based wholly on the claimant's subjective reports of pain and limitations, with no basis in the record, and this source had been treating the claimant for only 15 days at the time of the opinion." Tr. 23.

Plaintiff asserts the ALJ's rationale was insufficient, arguing that Dr. Ello did perform some objective lab testing, and that there is no indication Dr. Ello did not review Plaintiff's medical records when he became her patient. ECF No. 15 at 13-14. Defendant argues there is nothing in her treating records that indicates she *did* review past records, and the two visits she had with him do not contain an objective basis for the opinion. ECF No. 16 at 10-11. Defendant further points out that Dr. Ello did not list any conclusive diagnoses regarding abdominal pain and specifically stated that she was unsure about his condition and was referring him to a GI specialist. *Id.*

The Court finds the ALJ's analysis is supported by substantial evidence. A doctor's opinion may be discounted if it is "based to a large extent on a claimant's

self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008). As discussed below, the ALJ offered clear and convincing reasons for discounting Plaintiff's subjective reports. Furthermore, there is nothing in Dr. Ello's treatment records that substantiates Plaintiff's reports of abdominal pain, and Plaintiff did not even report GI issues at his initial appointment with Dr. Ello. Tr. 720-22.

However, because this claim is being remanded for reconsideration of other medical evidence, the ALJ shall reevaluate the entire record in making a new decision.

***d. Dr. Veraldi***

Plaintiff argues the ALJ failed to account for Dr. Veraldi's testimony at the hearing that Plaintiff would have moderate to marked difficulties with concentration, persistence, and pace, and that he would require more than the typical amount of supervision allowed in competitive employment. ECF No. 15 at 14.

The ALJ adopted Dr. Veraldi's testimony regarding Plaintiff's limitations in concentration, persistence, and pace. Tr. 19. With respect to supervision, Dr. Veraldi indicated her agreement with other opinions in the file that Plaintiff would need more than the typical supervision allowed. Tr. 66. However, it is for a vocational expert to testify as to the impact of vocational limitations. The vocational expert testified that an individual needing supervision up to one-third of the workday was still competitively employable. Tr. 79. She testified that supervisory contact in unskilled work could range anywhere from five percent of the day up to one-third of the day. Tr. 80-81. The ALJ found Plaintiff would require supervisory contact up to one-third of the day. Tr. 20. Because the ALJ did not reject Dr. Veraldi's opinion, and issued an RFC consistent with the opinion, the ALJ did not err.

///

**2. Step three findings**

Plaintiff argues the ALJ erred in finding his intellectual disability does not meet the requirements of Listing 12.05. ECF No. 15 at 15-16. Specifically, he argues the ALJ erred by failing to discuss Listing 12.05 despite Plaintiff's low IQ scores, and that the ALJ erred in his assessment of the "paragraph B" criteria and should have found at least two of the criteria to be marked. *Id.* Defendant asserts the ALJ sufficiently discussed the evidence and argues Plaintiff has failed to advance any plausible theory for how the listing is met. ECF No. 16 at 11-13.

A claimant is considered disabled at step three when his impairment meets or equals a listed impairment in Appendix 1 and meets the durational requirement. 20 C.F.R. § 416.920(d). Listing 12.05B is met when the individual has a full-scale IQ of 70 or below and significant deficits in adaptive functioning manifested by an extreme limitation of one or marked limitation of two of the "paragraph B" criteria, and the evidence supports the conclusion that the disorder began prior to the claimant's attainment of age 22. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05B.[2]

The ALJ discussed two other mental listings and found Plaintiff's condition did not meet or equal either of them because he did not have one extreme or two marked limitations in the paragraph B criteria. Tr. 18-19.

Plaintiff argues the ALJ's failure to discuss Listing 12.05 in light of Plaintiff's low IQ scores demonstrates the ALJ did not make adequate findings

---

[2]Listing 12.05A requires a showing of the claimant's dependence on others for personal needs, such as toileting, eating, or dressing, and cognitive inability to participate in standardized testing of intellectual functioning. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05A. Plaintiff has not advanced an argument that this portion of the Listing is met or equaled, and the record shows he was able to complete standardized testing and adequately care for himself.

regarding the B criteria. ECF No. 15 at 15-16. Plaintiff fails to advance any specific argument regarding what evidence indicates that the ratings in any of the B criteria should have been higher. The burden of proof is on the claimant to establish he meets or equals any of the impairments in the Listings. *See Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id*. at 1100.

The Court finds the ALJ's conclusions regarding the paragraph B criteria are supported by substantial evidence. He cited to record evidence and Dr. Veraldi's testimony in making each of the findings. Though the ALJ failed to mention Listing 12.05, the B criteria are the same for each of the mental listings. Because the ALJ's findings did not amount to listing-level severity for the other mental listings, they did not reach listing level for 12.05B either.

**3. Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 15 at 16-19.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 20. The ALJ found: (1) the medical evidence of record did not support the alleged severity; (2) Plaintiff's pattern of work activity was incompatible with his disability allegations; and (3) Plaintiff's activities of daily living were inconsistent with his disability allegations. Tr. 20-23.

In making an assessment of a claimant's allegations, an ALJ may rely on evidence that the claimant's condition "ha[s] remained constant for a number of years" and "ha[s] not prevented [the claimant] from working over that time." *Gregory v. Bowen*, 844 F.2d 664, 666-67 (9th Cir. 1988). An ALJ may also consider the fact that a claimant was able to work "with a fair amount of success." *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Here, the ALJ noted Plaintiff's work history was stronger after the filing date than before, noting that he sustained substantial gainful activity in 2017 without any evidence of medical improvement. Tr. 22. Plaintiff argues he should not be penalized for attempting to work and failing due to his impairments. ECF No. 15 at 18. However, his assertion that he lost his job due to an inability to complete his tasks or stay focused is not supported by the record. The record indicates this job ended due to a no show/no call incident. Tr. 51. Other records indicate he had some conflict with his boss leading up to his termination. Tr. 707. However, despite indications that he required some additional supervision and was not always completing his duties as assigned, Tr. 668, 685, the record indicates Plaintiff did well at his job and was not going to be terminated for these issues and that he managed to earn a raise after his supported employment had ended, Tr. 675, 691, 704. Plaintiff even indicated at times that he wanted more training on new responsibilities. Tr. 661,

///

681. The ALJ's assessment that Plaintiff's work activity during 2017 detracts from his allegations of disabling symptoms is supported by substantial evidence.

Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may legitimately consider the objective exam findings and their consistency with a claimant's allegations. The ALJ here noted the mostly unremarkable findings regarding Plaintiff's gastrointestinal complaints, including normal bloodwork, colonoscopy, esophagogastroduodenoscopy, and biopsies. Tr. 21. He also noted unremarkable mental health treatment records through 2017, with few complaints of mental symptoms other than frustration with work and housing issues. Tr. 21-22. While the ALJ noted the record contains objective testing regarding Plaintiff's cognitive impairment, the ALJ's conclusion that the objective evidence is inconsistent with the extent of the reported limitations is supported by substantial evidence.

A claimant's daily activities may also support an adverse credibility finding if the claimant's activities contradict his other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ failed to identify activities that demonstrate any inconsistency with Plaintiff's allegations. Plaintiff has alleged debilitating episodes of abdominal cramping, but he has not alleged that this is constant pain every day. Tr. 74. Therefore, there is no inconsistency with him having done yard work one day or continuing to skateboard for recreation. Tr. 22-23. The mental activities identified by the ALJ, including basic self-care and being able to drive a car are not inconsistent with Plaintiff's allegations regarding a lack of focus and sustained attention. Though inconsistent daily activities may provide a justification for rejecting symptom testimony, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Benecke v. Barnhart*, 379 F.3d 587, 594

(9th Cir. 2004). This therefore did not constitute a clear and convincing reason for discounting Plaintiff's allegations. However, the ALJ provided other sufficient reasons for discounting Plaintiff's allegations and any error with respect to daily activities is harmless. *See Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid).

Even though the ALJ provided clear and convincing reasons for discounting Plaintiff's allegations, as this claim is being remanded for reconsideration of the medical evidence, the ALJ shall also re-evaluate Plaintiff's statements and testimony. The ALJ shall reassess what statements, if any, are not consistent with the medical evidence and other evidence in the record, and what specific evidence undermines those statements.

**4. Step four and step five**

Plaintiff argues that the ALJ's job findings at steps four and five are unsupported due to the errors in evaluating the medical evidence. ECF No. 15 at 19-20. Because the ALJ erred in evaluating the opinion evidence, on remand he will reassess the RFC and make additional job findings as warranted.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective

complaints, and, as necessary, formulate a new RFC, obtain supplemental testimony from a vocational expert, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED April 1, 2020.




JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE